DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/1/06

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KEVIN SARAUW, on behalf of                       :
KEVIN I. SARAUW, JR.                             :
                                                 :
                            Petitioner,          :
                                                 :     05 Civ. 5794 (HB)
              - against -                        :
                                                 :     OPINION & ORDER
JO ANNE B. BARNHART,                             :
COMMISSIONER                                     :
Social Security Administration,                  :
                                                 :
                            Respondent.          :
------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., District Judge:[1]**

On June 22, 2005, Kevin Sarauw ("Sarauw" or "Plaintiff's father"), filed this action on behalf of his son, Kevin I. Sarauw, Jr. ("Kevin" or "Plaintiff") requesting that this Court vacate the final decision of the Commissioner of Social Security ("Commissioner") and remand the case for further proceedings. On February 21, 2006, the Plaintiff's father filed a motion for judgment on the pleadings pursuant to Federal Rules of Civil Procedure Rule 12(c) and the Commissioner filed a cross-motion. For the reasons set forth below, Plaintiff's motion is GRANTED to the extent that the matter is remanded to the ALJ for further administrative proceedings consistent with this Opinion.

## I.   PROCEDURAL HISTORY

On June 2, 2003, Sarauw filed an application on his son's behalf for Supplemental Security Income ("SSI") disability benefits. The application was denied initially at the local Social Security office and on reconsideration by the State Disability Determination Services office.[2] Five days later, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing took place on October 21, 2004, and on November 24, 2004, Administrative Law Judge Richard Zack issued a decision that found that Plaintiff was not disabled and thus ineligible for SSI benefits. Sarauw then appealed and the Appeals Council, on

---

[1] Stephanie Oliva, a Summer 2006 intern in my Chambers and a rising second-year law student at Brooklyn Law School, provided substantial assistance in the research for this Opinion.
[2] The initial denial was on August 14, 2003, Tr. at 28-29, and upheld on reconsideration on August 20, 2003. Tr. at 30-32.

1

April 20, 2005, denied his request for review of the ALJ's decision. On June 22, 2005, the Plaintiff filed this action in this Court.

## II. BACKGROUND

### A. Statement of Facts

Kevin I. Sarauw, Jr. was born on August 25, 1995, following cocaine exposure in utero. He was born prematurely at six months gestation, weighed only 1.86 pounds at birth, and had to be resuscitated in his first day of life. He dropped to 1.65 pounds within a week after his birth. Kevin spent his first eight months hospitalized, during which time he suffered numerous disorders, including neonatal respiratory distress syndrome, patent ductus arteriosus, neonatal necrotizing enterocolitis, retinopathy of prematurity, and bronchopulmonary dysplasia. He was released from the hospital in June 1996, at which time he was placed in foster care. His father obtained custody in 2002.

### B. Medical and Educational Evidence

Beginning in October 1998, at the age of three, Kevin attended a full day early childhood school program that included speech, occupational and physical therapy. The class consisted of a small child-to-teacher ratio of 12:1:2. Little Meadows Early Childhood Center, 9/27/99 Educational Progress Report ("Progress Report"), Administrative Transcript ("Tr.") at 59. A speech and language evaluation revealed delays in receptive and expressive language skills. Little Meadows Early Childhood Center, 1/4/00 Speech and Language Addendum, Tr. at 58. Kevin remained in a small class setting, and a May 2002 education report recommended that he continue in this setting. Tr. at 65. In March 2003, at the age of seven, an education report performed by the New York State Department of Social Services classified him as learning disabled, though he had normal social functioning. New York City Department of Education, 3/28/03 Individualized Education Program, Tr. at 73, 76.

Dr. Tomasito Virey, a pediatric specialist, and Dr. Edward Hoffman, a psychologist, both examined Kevin in July 2003 at the request of the Social Security Administration. Dr. Virey diagnosed Kevin with a learning disability, speech and language problems, mild hypotonicity, developmental delay, significant prematurity and hyperactivity. Diagnostic Health Services, Inc., 7/11/03 Tomasito Virey, MD Report, Tr. at 122. Dr. Hoffman conducted psychiatric and cognitive evaluations and found that Kevin had deficient functioning in math as well as very

deficient functioning in attention to visual details and oral comprehension.[3] Diagnostic Health Services, Inc., 7/11/03 Edward Hoffman, PhD Report, Tr. at 131-132. Dr. Hoffman diagnosed learning problems by history as well as borderline intellectual functioning,[4] and recommended that Sarauw continue to receive intensive speech, language and educational services. Id. But Dr. Hoffman found that Kevin had adequate adaptive functioning and socialization skills. Id. at 131.

Kevin's treating physician, Dr. Fredrick Matzner, a child psychiatrist, stated in October 2004 that he was treating Kevin for Attention Deficit Hyperactive Disorder ("ADHD"). 10/15/04 Letter from Frederick Matzner, MD to Judge Zack, Tr. at 140. Dr. Matzner prescribed Concerta to treat Kevin's ADHD. Id. Mental Health Social Worker Eileen Brito confirmed the ADHD diagnosis. See 10/20/04 Children's Mental and Physical Impairment Evaluation by Eileen Brito, Tr. at 141. She also reported that Kevin had a Global Assessment of Function ("GAF") score of 52.[5] Brito began weekly treatment sessions with Kevin on November 14, 2003. Id. At the time of her evaluation, she had treated Kevin for almost a year. Id.

Kevin has a history of asthma, which has been treated with medication. Burnside Medical Center, Pediatric Initial and Interval Physical Exam Form, Tr. at 111-115.

### III. STANDARD OF REVIEW

A civil action in federal court that challenges the denial of SSI benefits can be filed after "any final decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C. § 405(g); See also 42 U.S.C. § 1383(c)(B)(3). When the Appeals Council denied Plaintiff's request for review, the ALJ's November 24, 2004 decision became the final decision on Sarauw's SSI disability application. See Notice of Appeals Council Action, Tr. at 5.

When reviewing an ALJ's denial of SSI benefits, courts do not perform a de novo review. Instead, the court must undergo a two step inquiry and can only set aside a determination that is based on legal error or is not supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). In other words, the court must determine whether the ALJ applied the appropriate legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. Mimms v. Heckeler, 750 F.2d 180, 185 (2d Cir. 1984); see also Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Substantial evidence is "more than a mere scintilla. It

---

[3] Dr Hoffman concluded that these results were a valid representation of Kevin's cognitive functioning.
[4] These findings were supported by the test results and Kevin's special education history.
[5] The GAF Scale ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health. According to DSM-IV, a GAF score of 50 indicates serious to moderate degree of limitations.

3

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. §405(g). Further, even if the administrative record supports disparate findings in favor of both parties, the court must accept the ALJ's factual determinations. Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997). The burden of proof is on the claimant to prove disability throughout the period for which benefits are sought. Schauer v. Schweiker, 675 F.2d 55, 59 (2d Cir. 1982).

## IV. DISCUSSION

### A. Definition and Determination of Disability

The Social Security Act provides that a child under the age of 18 is disabled if he/she meets the following definition.

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(C)(i). Additionally, no child "who engages in substantial gainful activity . . . may be considered to be disabled." 42 U.S.C. §1382c(a)(3)(C)(ii).

To make a disability determination, the combined effect of all impairments on health and functioning are considered. 20 CFR § 416.924(a). Specifically, the ALJ undergoes the following analysis to determine disability. First, if a child can perform "substantial gainful activity," that child is deemed not disabled. If a child cannot perform substantial gainful activity, the ALJ considers "physical or mental impairment(s) first to see if [the child has] an impairment or combination of impairments that is severe." Id. If the impairment is not severe, the child is not disabled. If the impairment is severe, further review is conducted to determine if the impairment "meets, medically equals, or functionally equals the listings." Id. The Listing of impairments describes impairments that cause marked or severe limitations in functioning and sets forth the medical criteria for the evaluation of impairments.[6] If the child has an impairment that appears on the Listing of impairments for at least 12 months, the child qualifies as disabled. Id.

---

[6] For the full Listing, see Part B of 20 CFR Part 404 Appendix 1. See also 20 CFR § 416.925.

4

If the applicant fails this test, a child will still be deemed disabled if the impairment functionally equals the impairments on the listing. In other words, the impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains used to evaluate a child's functioning are: 1) acquiring and using information,[7] 2) attending and completing tasks,[8] 3) interacting and relating with others,[9] 4) moving about and manipulating objects,[10] 5) self-care activities,[11] and 6) health and physical well-being.[12] 20 C.F.R. § 416.926a(b)(1).

The SSA regulations provide that an impairment is of "marked" limitation when:

> [The] impairment interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 CFR § 416.926a(e)(2)(i). The SSA regulations provide that an impairment is an "extreme" limitation when:

> [The] impairment interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be very seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked"...

---

[7] This domain considers "how well [the child] acquires and learns information, and how well [the child] uses information learned." 20 C.F.R. § 416.926a(g).

[8] This domain requires that "we consider how well [the child] [is] able to focus and maintain [their] attention, and how well [the child] [can] begin, carry through, and finish [their] activities, including the pace at which [they] perform activities and the ease with which [they] change them." 20 C.F.R. § 416.926a(h).

[9] This domain considers "how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his/her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i).

[10] This domain considers "how [the child] move[s] [his/her] body from one place to another and how [he/she] move[s] and manipulate[s] things." 20 C.F.R. § 416.926a(j).

[11] This domain considers "how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s] [his/her] physical and emotional wants and needs met in appropriate ways; how [the child] cope[s] with stress and changes in [his/her] environment; and whether [the child] take[s] care of [his/her] own health, possessions, and living area." 20 C.F.R. § 416.926a (k).

[12] This domain considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the child's] functioning that we did not consider in paragraph (j) of this section." 20 C.F.R. § 416.926a (l).

5

[but] does not necessarily mean a total lack or loss of ability to function.

20 CFR § 416.926a(e)(3)(i).

The Commissioner considers all relevant information to assess the child's functioning. This may include medical sources – pediatricians, psychologists, qualified speech-language pathologists, physical, occupational, and rehabilitation therapists – as well as non-medical sources – parents, teachers, and other individuals who know the child. 20 CFR § 416.924a(a). Additionally, the Commissioner must consider the impact of chronic illness and limitations that interfere with the child's activities over time, as well as the effects of treatment, including medications, on the child's functioning. 20 CFR § 416.924a(b)(8) – (9).

## *B. ALJ's Decision*

Judge Zack concluded that although Kevin has a "severe" learning disability, he was not disabled. 11/24/2004 ALJ Decision, Tr. at 14. Neither Kevin's learning disability nor asthma satisfied the criteria of any impairment on the Listing of impairments. Id. at 15.

Thus, Judge Zack assessed whether any of Kevin's impairments resulted in a "marked" or "severe" limitation in any of the six functional domains described above. Id. at 17. He found no limitation in the self-care domain, and less than marked limitations in the remaining five domains.

## *C. Fully Developed Record*

The Plaintiff argues that the ALJ committed legal error when he failed to secure a treating source statement from Kevin's treating physician, Dr. Matzner. I agree.

The ALJ has an affirmative duty to develop the child's complete medical history for at least a twelve-month period. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). The SSA regulations provide as much.

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application.

20 C.F.R. § 404.1512(d).

It is well established that the expert opinion of the treating physician on the subject of medical disability is binding unless contradicted by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). An ALJ cannot reject the treating physician's diagnosis without first attempting to fill in any obvious gaps in the administrative record. Rosa v. Callahan, 168

F.3d 72, 79 (2d Cir. 1999). This record indicates that the only information the ALJ received from Dr. Matzner, Kevin's treating physician, was a four-line, hand-written note as follows:

> 10/15/04
> Kevin Sarauw Jr. is under my care for psychiatric symptoms.
> Diagnosis – ADHD 314.01
> Medication – Concerta 36 mg [illegible] AM

Tr. at 140. There was no mention of the severity of Kevin's ADHD or even whether Matzner considered Kevin disabled. These gaps should have prompted the ALJ to seek further information from Matzner before issuing a decision in this case. In fact, it was his duty to do so. See Schall v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."). The SSA regulations provide that the ALJ will re-contact medical sources "when the evidence [they] receive from [the] treating physician or psychologist or other medical source is inadequate for [them] to determine whether [the claimant] [is] disabled." 20 C.F.R. § 404.1512(e). There is no indication of any such inquiry here.

The "treating physician rule" provides that "the medical opinion of the doctor who treated the claimant is [to be] given greater weight relative to other medical evidence before the [ALJ]." Havas v. Bowen, 804 F.2d 783, 785 (2d Cir. 1986). Here there is only one sentence dedicated to the findings of Dr. Matzner in the ALJ's nine page decision. And that sentence is hardly helpful: "In October 2004, the claimant's treating psychiatrist reported that the claimant had attention-deficit hyperactivity disorder and takes Concerta for it." Tr. at 15. As discussed above, the ALJ was obligated to ensure that the record was fully developed, which would include the treating physician's assessment of Kevin's functioning, and he failed to do so.

In the alternative, the Plaintiff argues that even if the ALJ did not commit legal error, new evidence regarding the severity of Kevin's ADHD from Kevin's treating physician warrants a remand for further consideration. I do not reach this issue since I find that the ALJ's failure to fully develop the record constitutes legal error.

### D. *Plaintiff's Structured Setting*

The Plaintiff also argues that the ALJ failed to consider the effect of Kevin's placement in a structured class environment on his impairments. I disagree.

The SSA regulations require that the ALJ take into consideration a child's placement in a structured setting and the amount of time that the child spends in the setting. 20 CFR §

416.924a(b)(5)(iv). The ALJ did just that. He credited the fact that Kevin has always received special education classes in a structured classroom, but also considered Kevin's functioning outside of the classroom environment, contrary to the Plaintiff's claim. See ALJ Decision, Tr. at 16; 10/21/2004 Administrative Hearing Tr. at 436-438. The ALJ noted that the Plaintiff is active outside of the classroom environment. He has friends, goes to the park, plays basketball, rides a scooter and bike, watches television, plays video games for hours at a time, and walks his dog. ALJ Decision, Tr. at 16.

## V. CONCLUSION

For the reasons above, Plaintiff's motion for judgment on the pleadings is granted and the Defendant's motion is denied. This case is remanded to the ALJ to fully develop the record and to assess any alleged new evidence. Any additional and/or modified findings of fact should be submitted to this Court for review.

**IT IS SO ORDERED.**

**New York, New York**
**August \_\_\_\_, 2006**

_____
U.S.D.J.